UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PHILADELPHIA INDEMNITY INSURANCE
COMPANY, a foreign corporation,

        Plaintiff,

v.                                CASE NO. 3:16-cv-369-J-34MCR

STAZAC MANAGEMENT, INC.,
LAUREN E. CARR, RONALD L. CARR,
STONEHURST PLANTATION MASTER
ASSOCIATION, INC., GREENLAND
CHASE HOMEOWNER'S ASSOCIATION,
INC., and AMELIA VIEW HOMEOWNERS
ASSOCIATION, INC.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on the Motion to Dismiss and in the

Alternative, Motion to Stay Pending Disposition of State Court Actions, filed by

Defendants Stazac Management, Inc., Lauren E. Carr, and Ronald L. Carr

("Motion") (Doc. 25) and Plaintiff's Response in Opposition thereto ("Response")

(Doc. 37).  For the reasons stated herein, the undersigned recommends that the

---

[1] "Within 14 days after being served with a copy of [a report and
recommendation on a dispositive motion], a party may serve and file specific written
objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b)(2).  "A
party may respond to another party's objections within 14 days after being served with a
copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings
and recommendations alters the scope of review by the District Judge and the United
States Court of Appeals for the Eleventh Circuit, including waiver of the right to
challenge anything to which no specific objection was made.  *See* Fed.R.Civ.P.
72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

Motion be **GRANTED in part** and **DENIED in part**.

## I.    Background

Stazac Management, Inc. ("Stazac"), in its capacity as a property manager,

purchased a Professional Liability Insurance Policy (policy number

PHSD1065087 – hereinafter, the "Policy"), effective September 8, 2015 to

September 8, 2016, from Philadelphia Indemnity Insurance Company ("PIIC").

(*See* Doc. 1-1.)  Under Section I.A. of the Insuring Agreements, the Policy stated:

> We shall pay on your behalf all sums, not exceeding the Limits of
> Liability and in excess of the applicable Deductible set forth in the
> Declarations, for which you shall become legally obligated to pay as
> damages resulting from any claim first made against you during the
> policy period or any subsequent extended reporting period arising
> out of a **wrongful act** committed after the retroactive date stated in
> Item 6[] of the Declarations and prior to the end of the policy period.

(*Id.* at 28 (some emphasis omitted).)  "Wrongful act" was defined as "a negligent

act, error, or omission committed or alleged to have been committed by you or

any person for whom you are legally responsible in the rendering of professional

services."  (*Id.* at 31 (emphasis omitted).)

Under Section III ("Exclusions"), the Policy stated:

> THIS POLICY DOES NOT APPLY TO ANY CLAIM OR CLAIM
> EXPENSES:
> A.    arising out of, resulting from, based upon or in consequence
>       of, any dishonest, fraudulent, criminal or malicious act, error or
>       omission, or any intentional or knowing violation of the law, or
>       gaining of any profit or advantage to which you are not legally
>       entitled; however, we will defend suits alleging the foregoing
>       until there is a judgment, final adjudication, adverse admission,
>       plea *nolo contendere* or no contest or finding of fact against

2

you as to such conduct.

. . .

D.    arising out of any Disciplinary Proceeding against any insured, however, we will defend you for said Disciplinary Proceeding up to a sublimit of liability ("Disciplinary Proceeding Sublimit") of ten thousand dollars ($10,000).  The Disciplinary Proceeding Sublimit shall be part of, not in addition to, the Limits of Liability as shown in Item 4[] of the Declarations and shall no way serve to increase the Limits of Liability.  Defense for disciplinary proceedings will still be subject to all other terms and provisions in this policy.

. . .

P.    arising out of, resulting from, based upon or in consequence of, directly or indirectly, any wrongful act committed prior to the policy period and subsequent to the retroactive date for which you gave notice under any prior insurance policy or which you had any basis to believe might reasonably be expected to give rise to a claim under this Policy[.]

No wrongful act of any individual insured nor any fact pertaining to any individual insured shall be imputed to any other partner, director, officer or employee for the purposes of determining the applicability of Exclusion A above.

(*Id.* at 31-33 (emphasis omitted).)

The Policy also contained several exclusions added by endorsement,

including the following:

COMMINGLING AND FAILURE TO PAY EXCLUSION
In consideration of the premium paid, it is agreed that this policy does not apply to any claim arising out of any actual or alleged commingling of or inability or failure to pay, collect or safeguard funds.

***

KNOWLEDGE OF WRONGFUL ACT EXCLUSION
In consideration of the premium paid, it is agreed that this policy does not apply to any wrongful act committed with the knowledge

3

that it was a wrongful act.

*** 

> PROPERTY MANAGER PRO PAK ELITE
> Section III. EXCLUSIONS, is amended to include the following:
> THIS POLICY ALSO DOES NOT APPLY TO ANY CLAIM OR
> CLAIM EXPENSES ARISING OUT OF:
> . . .
> CC. Any claim arising out of any actual or alleged commingling of or
> inability or failure to pay, collect or safeguard funds[.]

(*Id.* at 40-41, 48 (emphasis omitted).)

In September 2015, Stonehurst Plantation Master Association, Inc.

("Stonehurst") filed a lawsuit for civil theft and conversion against Stazac, Lauren

E. Carr, and Ronald L. Carr (collectively, the "Carrs")[2] in the Circuit Court,

Seventh Judicial Circuit, in and for St. Johns County, Florida.[3]  (*See* Doc. 1-3.)

Stonehurst alleged that it contracted with Stazac to perform managerial duties,

including accounting and financial services, and during the performance of such

duties, Stazac and the Carrs misappropriated an unknown amount of

Stonehurst's monies.  (*Id.* at ¶¶ 7-8.)  Stazac and the Carrs admitted that they

owe Stonehurst $49,811.89 for improperly withdrawing these funds from

Stonehurst's account and depositing them into Stazac's account.  (*Id.* at ¶ 9; *see*

---

[2] Lewis T. Carr was also named as a defendant in the state court action.  The Carrs are officers and directors of Stazac.

[3] In this action, Stonehurst alleges that it has claims against Stazac for negligence and breach of contract (*see* Doc. 33 at 7), but there is no indication that Stonehurst's operative complaint in the state court includes such claims.

4

*also id.* at 30-31, 38-42.)  As part of its conversion claim, Stonehurst alleged that

"Defendants have knowingly, unlawfully, maliciously, and with the intent to

indefinitely or permanently deprive [Stonehurst] of its property, took [sic]

possession of [Stonehurst's] property."  (*Id.* at ¶ 28.)

In February 2016, Greenland Chase Homeowner's Association, Inc.

("Greenland Chase") filed a lawsuit for civil theft and conversion against Stazac

and the Carrs[4] in the Circuit Court, Fourth Judicial Circuit, in and for Duval

County, Florida.  (Doc. 1-4 at 2.)  Greenland Chase alleged that it contracted with

Stazac to perform managerial duties, including accounting, administrative, and

maintenance services.  (*Id.* at ¶ 9.)  Greenland Chase further alleged that in the

Fall of 2015, Stazac and the Carrs had, inappropriately and without authority,

deposited $437,059.43 of funds belonging to Greenland Chase into Stazac's

bank accounts.  (*Id.* at ¶ 12; *see also id.* at 35.)  As part of its conversion claim,

Greenland Chase alleged that Stazac and the Carrs "knowingly, unlawfully, and

with the intent to deprive [Greenland Chase] of its property either temporarily or

permanently, took possession of [Greenland Chase's] property."  (*Id.* at ¶ 37.)  In

May 2016, Greenland Chase amended its state court complaint to include two

additional claims against Stazac: one claim for negligence in performing

professional duties under the contract, and one claim for breach of the

---

[4] Regions Bank was also named as a defendant in the state court action.  The claims against Regions Bank were for negligence and statutory conversion of negotiable instruments.

Association Management Agreement.  (*See* Doc. 26-1.)

On March 16, 2016, Amelia View Homeowners Association, Inc. ("Amelia View") sent a demand letter to PIIC, Stazac's insurer, in a good faith effort to settle Amelia View's claim against Stazac for diverting a total of $206,040.34 of Amelia View's funds.  (*See* Doc. 1-5.)  A response to the demand letter was due by April 15, 2016.  (*Id.*)  As of May 25, 2016, Amelia View has not filed a lawsuit against the Stazac Defendants, and has not determined or alleged whether the diversion of funds by these Defendants was negligent or intentional.  (*See* Doc. 31 at 7-8.)

On March 29, 2016, PIIC filed a Complaint for Declaratory Judgment ("Complaint") in this Court against Stazac, the Carrs, Stonehurst, Greenland Chase, and Amelia View, pursuant to 28 U.S.C. § 2201, in order to determine "whether there is insurance coverage under a property management firm's professional liability insurance policy for claims against the firm and its principals for civil theft and conversion."  (Doc. 1 at 1.)  The Complaint alleges in relevant part:

> The underlying claimants are homeowner's associations which contracted with Stazac to manage their associations, and which now have sued or will sue Stazac and the Carrs, alleging that they misappropriated their clients' funds and deposited them into Stazac's own account instead of the associations' accounts.  This action seeks a declaration that there is neither a duty to defend nor to indemnify against these claims, because they do not come within the insuring agreement and are categorically excluded from coverage. Alternatively, even if the complaints trigger a duty to defend, PIIC

6

> owes no duty of indemnification because other exclusions will, if the
> allegations are substantiated, foreclose coverage and the damages
> sought are not insurable as a matter of law.

(*Id.* at 1-2.)  The Complaint also alleges that PIIC has extended a defense to

Stazac and the Carrs in the state court actions pursuant to a reservation of

rights.[5]  (*Id.* at ¶ 15.)

In Count I, entitled "Declaration Sought: No Duty to Defend Stazac and the

Carrs," the Complaint alleges that PIIC has no duty to defend Stazac and the

Carrs because the underlying suits and Amelia View's demand letter do not arise

out of negligent acts, errors, or omissions in the rendering of services as property

managers, but rather out of deliberate conduct pertaining to taking funds that did

not belong to them, as opposed to the conduct of their professional services as

property managers.  (*Id.* at ¶ 29.)  PIIC alleges that even if the claims and the

demand letter trigger coverage, they are barred from coverage by the

Commingling and Failure to Pay Exclusion.  (*Id.* at ¶ 30.)  PIIC also alleges that

an existing or bona fide controversy exists between PIIC, Stazac, the Carrs and

the other Defendants in this action regarding the rights and duties with respect to

the Policy.  (*Id.* at ¶ 31; *see also id.* at ¶ 45.)  In Count I, PIIC seeks a judicial

determination that the Policy does not provide coverage for damages arising from

Stazac and the Carrs' conduct as alleged in the underlying cases and Amelia's

---

[5] As of the date of this Complaint, the *Stonehurst* case has been dismissed and
referred to alternative dispute resolution based on a provision in the management
agreement.  (Doc. 1, ¶ 27.)

demand, and that Stazac and the Carrs were never entitled to a defense from

PIIC with respect to the claims made in the underlying suits.  (*Id.* at ¶ 32.)

In Count II, entitled "Declaration Sought: No Duty to Indemnify Stazac or

the Carrs," PIIC alleges that even if a defense is owed to Stazac and the Carrs,

there is no duty to indemnify them because the allegations in the underlying

actions, if substantiated, foreclose coverage.  (*Id.* at ¶ 34.)  More specifically, PIIC

alleges:

> 35.    There are exclusions that entail factual considerations which
> may, in the Court's discretion, be deferred for consideration after
> there is finality in the underlying actions.
> 36.    First, should the evidence support the allegations of
> Stonehurst, Greenland Chase or Amelia, Exclusion A will apply.
> Paraphrased, it bars coverage for any claims or claims expenses
> arising out of any dishonest, fraudulent, or criminal act; or any
> knowing or intentional violation of the law, or gaining of any profit or
> advantage to which the insured was not entitled. . . .
> 37.    Second, there is the endorsed exclusion entitled "Knowledge
> of Wrongful Act" exclusion.  It applies to "any wrongful act committed
> with the knowledge that it was a wrongful act."  In the event that the
> evidence shows that licensed property managers – fiduciaries of
> their clients – stole or converted funds of the client associations, then
> this exclusion will apply.
> 38.    Third is the applicability of Exclusion P . . . , which applies to
> bar coverage for any claim or claims expenses for wrongful acts
> committed prior to the policy period which the insured had any basis
> to believe might reasonably be expected to give rise to a claim under
> the Policy.
> 39.    Lastly, the developed record may support rescission of the
> Policy, based on a material misrepresentation made by Lauren Carr
> in her application for professional liability coverage in 2011.  When
> Lauren Carr completed the application for coverage with PIIC in
> September 2011, over $84,000 in receipts payable to Greenland
> Chase had been deposited into Stazac's accounts.  If any principal
> or officer of Stazac was aware of these transactions, then her

answer to question 23 on the application was materially false.[6]

(*Id.* at ¶¶ 35-39.)

In Count III, entitled "Declaration Sought: No Duty to Indemnify Stazac or the Carrs for the Damages Sought," PIIC alleges that even if a defense is owed to Stazac and the Carrs, there is no duty to indemnify them because the underlying complaints and Amelia's demand letter seek damages that are uninsurable as a matter of law.  (*Id.* at ¶ 41.)  PIIC explains:

> 42.    An insured incurs no loss and there are no damages within the meaning of an insurance policy when an insured is being compelled to return or disgorge money that it wrongfully obtained.  To allow such damages to be insurable would permit a wrongdoer to transfer the cost of disgorgement to their insurer, eliminating their incentive for obeying the law.
> 43.    Stonehurst and Greenland Chase claim in their Complaints and Amelia claims in its demand that they are entitled to the return of the funds which the insureds wrongfully stole or converted.
> 44.    The nature of the damages sought, which is the return of the wrongfully obtained or converted monies, is uninsurable as a matter of law.

(*Id.* at ¶¶ 42-44.)

Greenland Chase, Amelia View, and Stonehurst answered the Complaint on May 16, 2016, May 25, 2016, and May 26, 2016, respectively.  (Doc. 26, 31, 33.)  On May 10, 2016, Stazac and the Carrs filed the present Motion seeking a dismissal of the Complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., or,

---

[6] Question 23 read as follows: "Having inquired all principals, partners and officers, are you aware of any act, error, omission, unresolved job dispute or any other circumstance that is or could be a basis for a claim under the proposed insurance?" (Doc. 1-2 at 4.)  This question was answered in the negative.  (*Id.*)

alternatively, a stay of these proceedings pending disposition of the state court actions.[7]  (Doc. 25.)  PIIC responded to the Motion on June 9, 2016.  (Doc. 37.)  On October 11, 2016, Judge Howard referred the Motion for a report and recommendation regarding an appropriate resolution.  (Doc. 38.)

## II.     Standard

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  The Court is "not bound to accept

---

[7] Amelia View filed a Notice of Joinder in the present Motion (Doc. 32), which was stricken by the Court on June 1, 2016 (*see* Doc. 36).

as true a legal conclusion couched as a factual allegation." *Id.* "[B]are

assertions" that "amount to nothing more than a 'formulaic recitation of the

elements'" of a claim "are conclusory and not entitled to be assumed true." *Id.* at

680.

In evaluating the sufficiency of a complaint, a court should make

reasonable inferences in plaintiff's favor, but is "not required to draw plaintiff's

inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009)

(internal citation and quotation marks omitted). "Similarly, unwarranted

deductions of fact in a complaint are not admitted as true for the purpose of

testing the sufficiency of plaintiff's allegations." *Id.* (internal citation and quotation

omitted); *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not

entitled to be assumed true").

The Court must limit its consideration to the complaint and its attachments.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir.

1997) (per curiam); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th

Cir. 1993) (stating "the court limits its consideration to the pleadings and exhibits

attached thereto"); *see also* Fed.R.Civ.P. 12(d) ("If, on a motion under Rule

12(b)(6) or 12(c), matters outside the pleadings are presented to and not

excluded by the court, the motion must be treated as one for summary judgment

under Rule 56."). "However, where the plaintiff refers to certain documents in the

complaint and those documents are central to the plaintiff's claim, then the Court

may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks*, 116 F.3d at 1369.  In such a case, if the defendant attaches these documents to the motion to dismiss, the Court need not convert the motion to dismiss into a motion for summary judgment.  *Id.*

Further, a court may take judicial notice of public records, such as a complaint filed in another court, without converting a motion to dismiss into a motion for summary judgment.  *Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. Apr. 18, 2006); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277-78, 1280 (11th Cir. 1999).  "This is so, as long as such documents are 'public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can] not reasonably be questioned.'" *Beepot v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.*, 3:10-cv-423-J-34PDB, 2014 WL 5488791, *2 (M.D. Fla. Oct. 30, 2014).  Also, "a court may take notice of another court's order . . . for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation."  *Id.*

## III.   Discussion

Stazac and the Carrs make several arguments for a stay or dismissal of this action pending resolution of the state court actions.  As an initial matter, they argue that this action should be stayed or dismissed because there are parallel proceedings in state court.  PIIC responds that this action for declaratory

12

judgment, which is based on diversity jurisdiction, "is not subject to dismissal in favor of a parallel state court proceeding because there is *no such proceeding*." (Doc. 37 at 2.)  PIIC explains that "the only proceedings pending in state court are the underlying lawsuits, which do not seek a declaration of PIIC's obligations to its insureds," and PIIC is not a party to the state court actions.  (*Id.* at 2, 4.)  The undersigned agrees with PIIC.

Because PIIC is not a party to the state court actions and those actions do not encompass issues of coverage, the cases cited by Defendants to support a stay or dismissal, are distinguishable.  *See, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995) (concluding that *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942),[8] "governs this declaratory judgment action and that district courts' decisions about the propriety of hearing declaratory judgment actions . . . should be reviewed for abuse of discretion," but declining "to delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or *cases in which there are no parallel state proceedings*") (emphasis added); *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005) (providing a list of nine factors/guideposts to aid the district courts in

---

[8] As observed in *Wilton*, 515 U.S. at 283, *Brillhart* indicates that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the *same issues*, not governed by federal law, between the *same parties*," and that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."  *Brillhart*, 316 U.S. at 495 (emphasis added).

13

balancing state and federal interests when determining whether to abstain from exercising jurisdiction over state-law claims in the face of *parallel litigation* in the state courts); *Progressive Specialty Ins. Co. v. Bailey*, Case No.: 06-0289-WS-C, 2006 WL 2091749, *6 (S.D. Ala. July 25, 2006) (declining to exercise jurisdiction because "the same exclusively state law issues presented in this case are presently being litigated by the same parties in a parallel state court proceeding, this action includes only a subset of the matters being litigated in the state court, and this action has been invoked by Progressive in a strategy to freeze coverage issues out of the state court proceeding," and because it appears that "all parties to this action will have full and adequate recourse to litigate all legal issues presented herein in the *Bailey* Action").

This action is more analogous to *Auto-Owners Insurance Company v. Emerald Star Casino & Resorts, Inc.*, Case No.: 8:09-cv-1129-T-24MAP, 2009 WL 3446745 (M.D. Fla. Oct. 21, 2009), and *Northland Insurance Company v. Top Rank Trucking of Kissimmee, Inc.*, 823 F. Supp. 2d 1293, 1296 (M.D. Fla. 2011). In *Auto-Owners*, the court observed that the insurance carrier was not a party in the underlying state court action and the coverage issues presented in the federal action were not before the state court; therefore, the court concluded that the declaratory judgment action was properly before the district court, distinguishing the case from *Brillhart* and *Wilton*, among others, which involved parallel proceedings between the same parties and involved the same issues.  2009 WL

14

3446745 at *2; *see also Allstate Fire & Cas. Ins. Co. v. Roux*, Case No.: 2:15-cv-

56-FtM-29DNF, 2015 WL 4459487, *3 (M.D. Fla. July 21, 2015) (finding the

*Wilton-Brillhart* abstention doctrine to be inapplicable because the insurance

company was not a party to the underlying state court action and denying

defendant's motion to dismiss on that basis); *Smithers Constr., Inc. v. Bituminous*

*Cas. Corp.*, 563 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008) (finding that "abstention

or remand is not warranted because there is no parallel litigation in state court

addressing the same issues between same parties that would resolve the

insurance coverage dispute at issue in this action").

>    Similarly, in *Northland*, the court stated:
>
>    Here, the case pending in state court does not involve the same
>    parties.  Although all parties in the state-court case are named as
>    defendants in this case, Northland is not a party to the state-court
>    case.  Further, the state-court case and this case do not present the
>    same legal issues.  The issues in the state-court case are Hines's
>    alleged negligence and Top Rank's alleged vicarious liability.  The
>    only question presented in this case is whether, with respect to
>    Rojas's death, Northland incurs any obligations arising out of its
>    insurance policy with Top Rank.  Therefore, the federal-state
>    interests discussed in *Roach* and concern for uneconomical and
>    vexatious litigation from *Brillhart* are not relevant in this case.
>    Accordingly, this Court will exercise its discretion by allowing
>    Northland's claim to proceed in this separate action for declaratory
>    judgment.

823 F. Supp. 2d at 1296 (footnote omitted).  Based on the foregoing, the

undersigned recommends that the Court exercise its discretion to allow this

declaratory judgment action to proceed in this Court.

Defendants further argue that Count I of PIIC's Complaint should be dismissed and the remaining counts should be either stayed or dismissed until resolution of the underlying actions because PIIC has a duty to defend them pursuant to Section III(A) and (D) of the Policy, and there is a duty to defend the conversion claims because conversion can be committed negligently.  PIIC responds that it is procedurally improper for Defendants to argue that the Complaint fails to state a claim because PIIC allegedly owes them a duty to defend.  PIIC explains that this Court's only inquiry is whether the Complaint alleges an actual controversy and whether it should exercise its discretion to consider the merits.

The undersigned recommends that PIIC has alleged an actual controversy to avoid dismissal of this action for failure to state a claim upon which relief can be granted.  "The test for the sufficiency of a complaint for declaratory judgment is not whether the plaintiff will succeed in obtaining the decree he seeks favoring his position, but whether he is entitled to a declaration of rights at all." *Schwab v. Hites*, 896 F. Supp. 2d 1124, 1132 (M.D. Fla. 2012) (internal citations and quotation marks omitted).  The question is "whether there is an 'actual controversy' within the meaning of the Declaratory Judgment Act, . . . since the District Court is without power to grant declaratory relief unless such a

controversy exists."[9]  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272 (1941).  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* at 273; *see also Perez v. IndyMac FSB*, Case No.: 6:12-cv-1146-Orl-28TBS, 2012 WL 12538952, *4 (M.D. Fla. Nov. 5, 2012) ("The parties must have an actual, present, adverse and antagonistic interest in the subject of the complaint.") (internal citations and quotation marks omitted).

Here, as in *Nationwide Mutual Fire Insurance Company v. Myers*, the controversy is "one of insurance coverage."  *Myers*, Case No.: 5:08-cv-142-Oc-10GRJ, 2009 WL 890385, *2 (M.D. Fla. Mar. 31, 2009).  PIIC seeks a declaration that it has no duty to defend or indemnify Defendants in the underlying state court actions.  These coverage issues are not raised in the state court actions and PIIC is not a party to those actions.  There is a present controversy at least with

---

[9] "The standard for determining whether an 'actual controversy' exists within the meaning of the Declaratory Judgment Act is the same as that under the 'case or controversy' requirement of Article III of the Constitution. . . . The Supreme Court has defined a 'controversy' in the Constitutional sense as one that is appropriate for judicial determination.... The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Gianassi v. State Farm Mutual Automobile Ins. Co.*, 60 F. Supp. 3d 1267, 1272 (M.D. Fla. 2014).

respect to the duty to defend.  *See, e.g.*, *State Farm Fire & Cas. Co. v. Myrick*, Case No.: 2:06-cv-359-WKW, 2007 WL 3120262, *2 (M.D. Ala. Oct. 23, 2007) ("Courts have recognized a controversy exists regarding the duty to defend when the insured seeks a defense from an insurance company, but the insurance company denies that it is obligated.").

PIIC has adequately alleged in Count I of the Complaint that an existing or bona fide controversy exists between PIIC, Stazac, the Carrs, and the other Defendants in this action regarding the rights and duties with respect to the Policy.  (*See* Doc. 1, ¶¶ 31, 45.)  PIIC alleges that it has no duty to defend Stazac and the Carrs because the underlying lawsuits and demand letter do not arise out of negligent acts, errors, or omissions in the rendering of services as property managers; and that even if coverage is triggered, it would be barred by the Commingling and Failure to Pay Exclusion.  (*Id.* at ¶ 29.)  Nevertheless, PIIC has extended a defense to Stazac and the Carrs in the state court actions pursuant to a reservation of rights.  (*Id.* at ¶ 15.)  PIIC seeks a declaration that the Policy does not provide coverage for damages arising from Defendants' conduct and that Defendants were never entitled to a defense from PIIC with respect to the claims made in the underlying lawsuits.  (*Id.* at ¶ 32.)

Defendants argue that the plain language of the Policy, specifically Section III(A) and (D), is repugnant to the allegations in Count I.  Essentially, Defendants are asking the Court to address the merits of the Complaint.  However, it would

18

be improper to do so at this stage of the proceedings.  *See, e.g.*, *Roux*, 2015 WL 4459487 at *4 (denying motion to dismiss where defendant argued the policy should be construed in his favor and that the case should be dismissed on the merits because "[s]uch arguments go beyond the adequacy of the pleading and are better suited for resolution at the summary judgment stage if the facts are undisputed").  Even if the Court is inclined to address the merits of the Complaint, it does not appear that Defendants' Motion has sufficiently shown that Count I would be subject to dismissal.

Under Florida law,[10] "[a] court's analysis of the duty to defend is limited to the allegations in the underlying complaint."  *Myers*, 2009 WL 890385 at *3.  "Where the complaint against the insured alleges any facts which actually, or even potentially, fall within the scope of coverage under the policy, the insurer is obligated to defend the entire suit."  *Philadelphia Indemnity*, 595 F. Supp. 2d at 1322-23 (internal citations omitted).  However, "where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint," the court may consider evidence outside the allegations of the underlying complaint.  *Am. Home Assurance Co. v. Vreeland*, Case No.: 8:05-cv-2250-T-30MSS, 2006 WL 1037111, *1 (M.D. Fla. Apr. 19, 2006) (citing *Higgins v. State Farm Fire & Cas. Co.*, 894 So.2d 5, 10 n.2 (Fla.

---

[10] In a diversity action, Florida law governs the duty to defend.  *Myers*, 2009 WL 890385 at *3 (citing *Hartford Ace & Indent. Co. v. Beaver*, 466 F.3d 1289, 1291 (11th Cir. 2006)).

2005)).

Here, Defendants point to Section III(A) and (D) of the Policy, which states, in relevant part, that the insurer "will defend suits alleging [certain conduct] until there is a judgment, final adjudication, adverse admission, plea *nolo contendere* or no contest or finding of fact against [the insured] as to such conduct." (*See* Doc. 1-1 at 31-33.)  However, Defendants fail to acknowledge that other exclusions in the Policy, such as the Commingling and Failure to Pay Exclusion[11] and the Knowledge of Wrongful Act Exclusion, among others, may be found applicable and bar coverage of the claims asserted against Stazac and the Carrs in the underlying actions.[12]  "If any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions."  *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 248 (N.J. 1979) (internal citations omitted); *see also LaMarche v. Shelby Mut. Ins. Co.*, 390 So.2d 325, 327 (Fla. 1980) (fully agreeing with the logic and reasoning of *Weedo*).  Further, "[t]here is no instance in which an exclusion can properly be regarded as inconsistent with another exclusion, since they bear no relationship with one another."  *Weedo*, 81 N.J. at 248.

---

[11] The failure to safeguard funds includes "the act of negligently or wrongfully releasing the funds."  *St. Paul Fire & Marine Ins. Co. v. Llorente*, 156 So.3d 511, 513 (Fla. Dist. Ct. App. 2014).

[12] PIIC asserts that "[t]he plain language of the failure-to-safeguard-funds exclusion precludes both a duty to defend and a duty to indemnify the Stazac defendants for their actions."  (Doc. 37 at 10.)

Further, Defendants argue that despite PIIC's allegations that the state court actions do not arise out of negligent acts, the underlying complaints include claims for conversion, which may be based on negligent acts.  Again, although Defendants correctly point out that "knowledge or intent is not a necessary element of a cause of action for conversion," *Stearns v. Landmar First Nat'l Bank of Fort Lauderdale*, 498 So.2d 1001, 1002 (Fla. Dist. Ct. App. 1986), such arguments go beyond the adequacy of the pleading and are better suited for resolution at the summary judgment stage.  Therefore, the undersigned does not believe that the Court should address the merits of the Complaint in order to decide the present Motion.

Given that there is a substantial controversy between the parties, who have real, immediate, and adverse legal interests, the undersigned recommends that the Court allow this declaratory judgment action to proceed as to Count I.  As stated in *Higgins*:

> A prompt determination of coverage potentially benefits the insured, the insurer and the injured party. . . . If the insurer is precluded from having a good faith issue of coverage expeditiously determined, this interferes with early settlement of claims.  The plaintiff certainly benefits from a resolution of coverage in favor of the insured.  On the other hand, if coverage does not exist, the plaintiff may choose to cut losses by not continuing to litigate against a defendant who lacks insurance coverage.

894 So.2d at 15.

As to PIIC's duty to indemnify, the courts in this Circuit have found that the

"duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit."  *Smithers*, 563 F. Supp. 2d at 1348; *see also Myers*, 2009 WL 890385 at *3 (stating that because the "duty to indemnify is dependent on the outcome of the case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim").  In Count II of the Complaint, PIIC alleges that even if a defense is owed to Stazac and the Carrs, there is no duty to indemnify them because the allegations in the underlying actions, if substantiated, foreclose coverage.  (Doc. 1, ¶ 34.)  In the next paragraph, PIIC alleges: "There are exclusions that entail factual considerations which may, in the Court's discretion, be deferred for consideration after there is finality in the underlying actions."  (*Id.* at ¶ 35.)  In light of these allegations and the applicable law, the undersigned recommends that the Court defer consideration of Counts II and III of the Complaint until the underlying state court actions are resolved.

## IV. Recommendation

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the Motion (**Doc. 25**) be **GRANTED in part** and **DENIED in part**.  The undersigned recommends that the Motion be granted only to the extent it seeks a stay as to Counts II and III of the Complaint pending resolution of the underlying actions, and denied in all other respects.  The undersigned also recommends that Stazac and the Carrs be directed to answer the Complaint **within fourteen (14)**

**days** of the Court's Order on this Report and Recommendation.

      **DONE AND ENTERED** at Jacksonville, Florida, on January 31, 2017.


                    MONTE C. RICHARDSON
              UNITED STATES MAGISTRATE JUDGE


Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record