**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

       Plaintiff,

                                Case No. 3:16-cv-369-J-34MCR

vs.

STAZAC MANAGEMENT, INC., et al.,

       Defendants.

_____

## O R D E R

**THIS CAUSE** is before the Court on Plaintiff, Philadelphia Indemnity Insurance Company's Renewed Motion for Final Summary Judgment and Supporting Memorandum of Law (Doc. 98; Renewed Motion), filed on January 30, 2018. On February 2, 2018, Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") filed supplemental authority in support of the Renewed Motion. See Plaintiff, Philadelphia Indemnity Insurance Company's Notice of Filing Supplemental Authority in Support of its Renewed Motion for Final Summary Judgment (Doc. 101; Supplement). Defendant Stonehurst Plantation Master Association, Inc. ("Stonehurst") responded to the Renewed Motion on February 13, 2018, see Defendant, Stonehurst Plantation [sic] Master Association, Inc.'s Response to Plaintiff, Philadelphia Indemnity Insurance Company's Renewed Motion for Final Summary Judgment (Doc. 102; Stonehurst Response), Defendant Greenland Chase Homeowner's Association, Inc. ("Greenland") responded on February 20, 2018, see Defendant Greenland Chase Homeowner's Association, Inc.'s Memorandum in Opposition to Plaintiff's Renewed Motion for Final Summary Judgment (Doc. 106;

-1-

Greenland Response), and Defendants Stazac Management, Inc. ("Stazac"), Lauren E. Carr, and Ronald L. Carr (collectively, the "Stazac Defendants") responded on February 27, 2018, <u>see</u> Defendants' Response and Memorandum of Law in Opposition to Plaintiff's Renewed Motion for Final Summary Judgment (Doc. 111; Stazac Response). Defendant Amelia View Homeowners Association, Inc. ("Amelia") has not responded to the Renewed Motion, and therefore, to the extent PIIC seeks relief against Amelia, the Renewed Motion is unopposed.[1] <u>See generally</u> Docket. Accordingly, this matter is ripe for review.

## I.     Background[2]

In this action, PIIC, an insurance company, seeks declarations regarding its duties to defend and indemnify the Stazac Defendants in three state-court actions (the "Underlying Actions") brought by Stonehurst, Greenland, and Amelia (collectively, the "Homeowners Associations") against Stazac and the Carrs. <u>See generally</u> Complaint for Declaratory Judgment (Doc. 1; Complaint). The Homeowners Associations each hired Stazac, a property management company run by Lauren and Ronald Carr, to manage their properties. <u>See</u> Cover-Pro Application (Doc. 98-2) at 2, 8, 10[3]; <u>see also</u> Stonehurst Association Management Agreement (Doc. 98-4; Stonehurst Agreement); Greenland Association Management Agreement (Doc. 98-7; Greenland Agreement); Amelia

---

[1]     As stated in the Court's Summary Judgment Notice (Doc. 100), the Court may not "base the entry of summary judgment on the mere fact that the motion [is] unopposed, but, rather, must consider the merits of the motion." <u>Reese v. Herbert</u>, 527 F.3d 1253, 1269 (11th Cir. 2008) (quoting <u>United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.</u>, 363 F.3d 1099, 1101 (11th Cir. 2004)). In doing so, the Court "must ensure that the motion itself is supported by evidentiary materials . . . [and] determine if there is, indeed, no genuine issue of material fact." <u>Id.</u> (internal quotations omitted).

[2]     The facts recited in this section are either undisputed, or any disagreement has been indicated. Because this case is before the Court on Plaintiff's Motion, the facts recited herein, and all reasonable inferences therefrom, have been viewed by the Court in a light most favorable to Defendants. <u>See</u> <u>T-Mobile S. LLC v. City of Jacksonville, Fla.</u>, 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).

[3]     Page numbers reflect the pagination assigned by the Court's CM/ECF docketing system, which are found at the top of each page.

Association Management Agreement (Doc. 98-11; Amelia Agreement) (collectively, the "Management Agreements"). The Underlying Actions arose out of the Stazac Defendants' alleged mismanagement of the Homeowners Associations' funds. <u>See generally</u> Statement of Claim (Doc. 98-3; Stonehurst's Underlying Statement of Claim); Amended Complaint (Doc. 98-6; Greenland's Underlying Amended Complaint); Complaint (Doc. 98-10; Amelia's Underlying Complaint) (collectively, the "Underlying Pleadings.").

**A. The Management Agreements**

As property manager for the Homeowners Associations, Stazac assumed a variety of duties, several of which relate to managing the Homeowners Associations' finances. <u>See</u> Management Agreements at 5-8 §5. Specifically, Stazac agreed to:

> (c) Collect and receive . . . all assessment charges which may be due from owners of the units in the Association, . . . [and] all fees and assessments for the boat and RV storage (if applicable) . . .
>
> (d) Provide the day to day accounting services necessary to pay the bills of the Association, and any other debts approved by the Board. This shall include keeping the proper records of accounts; preparation of all checks for payment of bills and such other items as may be provided for in the budget.
>
> (e) Supervise and maintain, for the account of the Association, complete and adequate books of account and other records reflecting the results of the operation of the Association, in accordance with generally accepted accounting principles constantly applied.
>
> (f) Prepare, review, and analyze the monthly financial statements with comparative budget figures and submit such to the Board. . . .
>         . . .
>
> (i) Maintain all accounting records of the Association in a manner to facilitate annual audits and reviews. Provide records to auditors hired by the Association to review accounting and financial statements. . . .

<u>Id.</u> at 6-7 §5.

**B. PIIC's Policy**

On September 8, 2011, PIIC issued a professional liability insurance policy to Stazac.  See Policy Number PHSD1065087 (Doc. 98-1; the Policy); Cover-Pro Application at 8.  PIIC issued renewal policies each year providing coverage through September 8, 2016.  See Policy at 2; Renewed Motion at 4 n.3.  Although Stazac is the named insured under the Policy, Lauren and Ronald Carr are individual insureds.  See Policy at 2, 5-6 §I.G.  The Policy provides coverage for damages[4] "arising out of a wrongful act," defined as "a negligent act, error, or omission committed or alleged to have been committed by you[5] or any person for whom you are legally responsible in the rendering of professional services."  Id. at 4 §I.A, 7 §II.P.

However, the Policy contains several coverage exclusions.  Id. at 7-9.  In relevant part, Exclusion A excludes coverage for "any claim[6] or claim expenses[7] arising out of, resulting from, based upon or in consequence of, any dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, or gaining of any profit or advantage to which [the insured is] not legally entitled."  Id. at 7 §III.A.  Nevertheless, in the Policy, PIIC agrees to "defend suits alleging the foregoing

---

[4]      The Policy defines damages as "a monetary judgment, award or settlement, including punitive damages or exemplary damages where insurable by law, but does not include the multiple part of multiplied damages, fines, taxes, sanctions or statutory penalties, including those based upon legal fees whether imposed by law, court or otherwise."  See Policy at 5 §II.E.

[5]      The Policy defines the terms "you," "your," and "insured" as "[t]he named entity" and "[a]ny individual insured."  See Policy at 7 §I.Q.

[6]      The Policy defines a claim as "a demand received by you for money or services, including the service of suit or institution of arbitration proceedings involving you arising from any alleged wrongful act." See Policy at 5 §II.B.

[7]      The Policy defines claim expenses as "fees charged by any lawyer designated by us and all other fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of a claim, if incurred by us," as well as other specified costs and expenses.  See Policy at 5 §II.C.

-4-

until there is a judgment, final adjudication, adverse admission, plea <u>nolo contendere</u> or no contest or finding of fact against you as to such conduct." <u>Id.</u> Notably, under Exclusion A, "[n]o wrongful act of any individual insured nor any fact pertaining to any individual insured shall be imputed to any other partner, director, officer or employee." <u>Id.</u> at 8-9 (the "No Imputation Clause").

Additionally, the Policy excludes coverage for any claim or claim expenses "arising out of, resulting from, based upon or in consequence of, directly or indirectly, any failure to effect or maintain any insurance or bond." <u>Id.</u> at 8 §III.E ("Insurance Exclusion"). The Policy also contains several endorsements with additional exclusions. The Commingling and Failure to Pay Endorsement, as well as the Pro Pak Elite Endorsement, exclude coverage for "any claim arising out of any actual or alleged commingling of or inability or failure to pay, collect or safeguard funds." <u>Id.</u> at 16, 20 §III.CC (collectively, the "Commingling Exclusion"). Additionally, the Knowledge of Wrongful Act Endorsement excludes coverage for "any wrongful act committed with the knowledge that it was a wrongful act." <u>Id.</u> at 17.

Further, the Policy specifies that if PIIC and an insured disagree with regard to PIIC's coverage obligations, PIIC may elect to defend the insured, but "reserve [its] rights to deny and reject any claim for damages," pursuant to a reservation of rights agreement. <u>Id.</u> at 12 §V.O. Under this provision, the Policy states that if "it is finally established by judgment or agreement that [PIIC] ha[s] no liability with respect to such a claim," PIIC is entitled to reimbursement for "all sums and monies paid . . . to defend and/or settle such claim." <u>Id.</u>

### C. Underlying Actions

On April 6, 2015, Michael Goldsberry, counsel for the Homeowners Associations, advised his clients to "conduct an audit [i]n reference to their finances." <u>See</u> Arrest and Booking Report (Doc. 98-16; Arrest Report) at 18. The Underlying Actions arose out of the Homeowners Associations' findings from those investigations. <u>See generally</u> Underlying Pleadings.

### i. Stonehurst's Underlying Action

Upon receipt of Goldsberry's advice, Stonehurst hired special counsel and a forensic accountant to audit its finances. <u>See</u> Stonehurst's Underlying Statement of Claim ¶14. As of July 22, 2015, Stonehurst was aware that it was missing $49,811.89. <u>See generally</u> Stonehurst's Communications with Stazac Defendants (Doc. 98-5; Stonehurst's Communications). Stonehurst's counsel advised the Stazac Defendants that Stonehurst intended to pursue a claim for civil theft pursuant to Florida Statutes section 772.11 (Section 772.11) if they did not return the missing funds by 3:00 p.m. on July 24, 2015. <u>Id.</u> at 2-3. Daniel M. Copeland, counsel for the Stazac Defendants, responded that his clients would not issue any payments until they conducted their own investigation. <u>Id.</u> at 5-6.

On August 28, 2015, Stonehurst initiated Case No. CA15-946 in the Circuit Court, Seventh Judicial Circuit, In and For St. Johns County ("Stonehurst's Underlying Action"). <u>See</u> Status Report (Doc. 75; Stonehurst's June 12, 2017, Status Report) ¶1. On September 3, 2015, Stonehurst amended its pleading. <u>See</u> Amended Complaint (Doc. 1-3; Stonehurst's Underlying Amended Complaint). On December 21, 2015, PIIC agreed to defend the Stazac Defendants under a reservation of rights agreement. <u>See</u> December

21, 2015, Letter from PIIC to Stonehurst (Doc. 98-13; Stonehurst Reservation of Rights) at 2.[8]  The state court subsequently stayed Stonehurst's Underlying Action pending completion of mediation and an arbitration.  See Stonehurst's June 12, 2017, Status Report ¶3.

On December 13, 2017, Stonehurst filed Stonehurst's Underlying Statement of Claim in arbitration.  See generally id.  As of that date, Stonehurst knew that $432,086.08 went missing from its account while the account was under Stazac's management.  Id. ¶14.  In Counts I and II of its arbitration statement, Stonehurst asserts claims for negligence against the Stazac Defendants based on their failure to properly deposit payments to Stonehurst and notify Stonehurst that deposits or other payments for Stonehurst were missing, and their failure "to recommend that the Association obtain insurance to cover against" misappropriated funds, respectively.  Id.  ¶¶20-29, ¶35. Stonehurst also alleges that the Stazac Defendants violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes section 501.2105 (Count IV), id. 44-49, and that Stazac breached the Stonehurst Agreement (Count III), id. ¶¶38-43. Stonehurst's remaining claims for damages (Count V), civil theft pursuant to Section 772.11 (Count VI), and conversion (Count VII) are based on its allegations of intentional misappropriation.  Id. ¶¶50-71.

---

[8]     PIIC sent a letter to Copeland and requested that Copeland "ensure that the contents of th[e] letter are brought to the attention of all Insureds and all other interested parties."  See Stonehurst Reservation of Rights at 2.

### ii. Greenland's Underlying Action

Greenland also conducted an investigation which concluded that the Stazac Defendants misappropriated $437,059.43 by depositing checks made payable to Greenland into Stazac's account, and electronically transferring funds from Greenland's account into Stazac's account. <u>See</u> February 2, 2016 Letter from Bedell Firm to the Stazac Defendants (Doc. 98-9; Greenland Letter) at 2-3. On February 2, 2016, Greenland's counsel notified the Stazac Defendants that it intended to pursue a claim for civil theft pursuant to Section 772.11. <u>See id.</u> On the same day, Greenland initiated Case No. 2016-CA-698 in the Circuit Court, Fourth Judicial Circuit, In and For Duval County ("Greenland's Underlying Action") by filing Greenland's Underlying Complaint. <u>See generally</u> Greenland's Underlying Complaint. PIIC agreed to defend the Stazac Defendants against Greenland's claims pursuant to a reservation of rights agreement on February 25, 2016. <u>See</u> February 25, 2016, Letter from PIIC to Greenland (Doc. 98-14; Greenland Reservation of Rights) at 2.

On May 16, 2016, Greenland filed Greenland's Underlying Amended Complaint. <u>See generally</u> Greenland's Underlying Amended Complaint. Greenland asserts claims against the Stazac Defendants for civil theft pursuant to Section 772.11 (Count III) and conversion (Count IV), and against Stazac for negligence (Count V) and breach of the Greenland Agreement (Count VI). <u>Id.</u> ¶¶27-51.[9]

### iii. Amelia's Underlying Action

Similarly, Amelia conducted an investigation and determined that the Stazac Defendants misappropriated $206,040.34 of its funds by depositing checks made payable

---

[9]     In Counts I and II, Greenland asserts claims against Regions Bank, which is not a party to this action. <u>See</u> Underlying Greenland Amended Complaint ¶¶16-26.

to Amelia into Stazac's account, electronically transferring funds from Amelia's account into Stazac's account, and improperly recording payments to Amelia. <u>See</u> Civil Theft Demand Pursuant to Section 772.11 (Doc. 98-12; Amelia's Demand) at 2; March 16, 2016, Letter from Amelia to Stazac Defendants (Doc. 1-5; Amelia's Settlement Communication) at 2-4. On March 16, 2016, counsel for Amelia advised PIIC of its potential claim, and offered to accept $206,040.34 to settle the matter. <u>See</u> Amelia's Settlement Communication at 4. Although PIIC did not accept Amelia's offer, on March 30, 2016, PIIC advised Amelia and Copeland that if Amelia commenced a lawsuit, PIIC would defend the Stazac Defendants under a reservation of rights agreement. <u>See</u> March 30, 2016, Letter from PIIC to Amelia (Doc. 98-15; Amelia Reservation of Rights) at 2. On June 23, 2016, Amelia sent a demand letter to the Stazac Defendants and warned them of its intention to pursue a claim for civil theft under Section 772.11. <u>See</u> June 23, 2016 Letter from Amelia to Stazac (Doc. 98-12; Amelia's June 23, 2016, Demand Letter) at 2.

On August 3, 2016, Amelia initiated Case No. 2016-CA-5132 in the Circuit Court, Fourth Judicial Circuit, In and For Duval County ("Amelia's Underlying Action") by filing Amelia's Underlying Complaint. <u>See generally</u> Amelia's Underlying Complaint. Amelia filed a motion to amend its pleading via interlineation on January 13, 2017. <u>See</u> Defendants, Stazac Management, Inc., Lauren E. Carr and Ronald L. Carr's Status Report (Doc. 114; Stazac's March 9, 2018, Status Report) at ¶1. The state court has not ruled on Amelia's motion to amend its complaint via interlineation. <u>Id.</u>

In Amelia's Underlying Complaint, Amelia asserts six claims based on the Stazac Defendant's misappropriation of Amelia's funds. <u>See generally</u> <u>id.</u> Specifically, Amelia asserts claims against the Stazac Defendants for civil theft pursuant to Section 772.11

(Count I), conversion (Count II), breach of fiduciary duty (Count IV), unjust enrichment (Count V), and conspiracy (Count VI), and against Stazac for breach of the Amelia Agreement (Count III). Id. ¶¶14-52.

### D. Criminal Charges Against Lauren Carr

On January 27, 2017, law enforcement arrested Lauren Carr pursuant to a warrant for two first degree felonies: (1) grand theft in violation of Florida Statutes section 812.014(2)(A)(1), and (2) organized fraud in violation of Florida Statutes section 817.034(4)(a)(1). See generally Arrest Report. The next day, the state of Florida commenced Case No. 17CF004335AD in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida ("Underlying Criminal Case"). See generally Underlying Criminal Case Docket (Doc. 98-17). Lauren Carr proceeded to trial, at the conclusion of which, on December 13, 2017, a jury found her guilty of organized fraud. See Verdict (Doc. 98-20) at 2. The court sentenced her to serve twelve years in jail, and ordered her to pay restitution to Stonehurst, Greenland and Amelia in the amounts for $424,558.24, $437,059.43, and $284,633.47, respectively. See Judgment and Sentence (Doc. 98-21) at 5; Judgment and Restitution Order (Doc. 101-1; Stonehurst Judgment) at 2 ¶1; Judgment and Restitution Order (Doc. 101-2; Greenland Judgment) at 2 ¶1; Judgment and Restitution Order (Doc. 101-3; Amelia Judgment) at 2 ¶1.

### E. Instant Dispute

PIIC initiated the instant action on March 29, 2016, by filing the Complaint to determine its obligations under the Policy. See generally Complaint. In Count I, PIIC seeks a declaration that it does not have a duty to defend the Stazac Defendants in the Underlying Actions. Id. ¶¶28-32. In Count II, PIIC seeks a declaration that even if it has

a duty to defend its insureds, it does not have a duty to indemnify them based on Exclusion A, the "Knowledge of Wrongful Act" exclusion, or Exclusion P. Id. ¶¶33-39. Similarly, in Count III, PIIC seeks a declaration that it does not have a duty to indemnify its insureds because the damages sought are uninsurable as a matter of law. Id. ¶44; see also id. ¶¶40-43. On March 28, 2017, the Court stayed Counts II and III of the Complaint pending resolution of the Underlying Actions. See generally Order (Doc. 46; Stay Order) (adopting Report and Recommendation (Doc. 41; Report)).

On April 20, 2017, PIIC filed a motion seeking entry of summary judgment on Count I of the Complaint. See Plaintiff, Philadelphia Indemnity Insurance Company's Motion for Final Summary Judgment and Supporting Memorandum of Law (Doc. 50; Motion). After the matter was fully briefed,[10] the Court set a hearing to determine the status of motions pending in the Underlying Actions to amend the Underlying Pleadings in order to identify which pleadings to consider to resolve the Motion. See Order (Doc. 81) and Endorsed Order (Doc. 84). At that time, Amelia's motion to amend its pleading via interlineation was pending before the state court, and Stonehurst had prepared a proposed second amended complaint that it had not yet filed. See Amelia's First Response at 7; Stonehurst's First Response at 2. At the hearing, after hearing from all parties, the Court denied the Motion without prejudice, and set a deadline of January 30, 2018, for the filing

---

[10]     Amelia responded on May 4, 2017, see Response to Plaintiff Philadelphia Indemnity Insurance Company's Motion for Final Summary Judgment and Supporting Memorandum of Law (Doc. 57; Amelia's First Response), and the remaining defendants filed their responses on May 18, 2017, see Defendants' Response and Memorandum of Law in Opposition to Plaintiff's Motion for Final Summary Judgment (Doc. 67); Defendant, Stonehurst Plantation Master Association, Inc.'s Response to Plaintiff, Philadelphia Indemnity Insurance Company's Motion for Final Summary Judgment and Incorporated Memorandum of Law (Doc. 68; Stonehurst's First Response); Defendant Greenland Chase Homeowner's Association, Inc.'s Memorandum in Opposition to Plaintiff's Motion for Final Summary Judgment (Doc. 69). With leave of Court, see Order (Doc. 72), PIIC filed a reply on June 2, 2017, see Plaintiff, Philadelphia Indemnity Insurance company's Reply in Support of its Motion for Summary Judgment (Doc. 73).

of a renewed motion for summary judgment if amended operative pleadings were filed with the appropriate tribunal.  See Clerk's Minutes (Doc. 85).  Since the hearing, Stonehurst filed Stonehurst's Underlying Statement of Claim, and Amelia advised that it no longer intends to pursue Amelia's Underlying Action.  See Status Report (Doc. 90; Stonehurst's Status Report) ¶5; Status Report as to Underlying Action—Amelia View Homeowners Association, Inc. v. Stazac Management, Inc., et al [sic] (Doc. 89; Amelia's December 12, 2017, Status Report) at 2.

On January 30, 2018, PIIC filed the Renewed Motion seeking entry of judgment in its favor on Count I of the Complaint.[11]  See generally Renewed Motion.  In the Renewed Motion, PIIC contends that it does not have a duty to defend the Stazac Defendants in the Underlying Actions because the Homeowners Associations' allegations in the Underlying Pleadings "place the claims squarely within the scope of the" Commingling Exclusion, the Insurance Exclusion, and Exclusion A.  Id. at 19-26.  Additionally, PIIC contends that coverage is excluded because the damages sought are uninsurable as a matter of law.  Id. at 26-28.  Pursuant to its reservation of rights agreements, PIIC argues that it is entitled to reimbursement for the fees and costs it has incurred in defending the Stazac Defendants.  Id. at 31-32.

In response, the Defendants generally contend that the Commingling Exclusion is ambiguous, and therefore must be interpreted narrowly in favor of coverage.  See Stazac

---

[11]    Notably, although all of the Underlying Actions are still pending, in a footnote PIIC contends that "[d]ue to Lauren Carr''s [sic] Organized Fraud conviction, Counts II and II [sic] (previously stayed pending record development) are ripe to be resolved."  See Renewed Motion at 7 n.9.  To the extent PIIC is suggesting that the Court resolve Counts II and III based on the Renewed Motion, it is mistaken.  Counts II and III were stayed by Court Order until resolution of the Underlying Actions.  See Stay Order at 6.  If PIIC believes circumstances warrant a lifting of the stay at this time, it must file a motion seeking such relief.  It cannot unilaterally declare the claims to be ripe for resolution.

Response at 8; Greenland Response at 5-10; Stonehurst Response at 3-4.  Additionally, they dispute the applicability of Exclusion A, and PIIC's contention that the damages sought are uninsurable as a matter of law.  See Stazac Response at 13-14; Greenland Response at 10-13; Stonehurst Response at 4.[12]  Notably, Defendants do not address PIIC's arguments that coverage is excluded under the Insurance Exclusion, or that PIIC would be entitled to reimbursement for its defense costs and attorney's fees if it is found to have no duty to defend.  See generally Stazac Response at 8; Greenland Response at 5-10; Stonehurst Response at 3-4.

## II.    Standard of Review

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).[13]  An issue is genuine when the evidence

---

[12]    Stonehurst does not address PIIC's contention that the damages sought are uninsurable as a matter of law.  See generally Stonehurst Response.

[13]    Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive."  Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013).  Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III.    Applicable Law[14]

Pursuant to Florida law, "interpretation of an insurance policy is a question of law to be decided by the court." Gulf Tampa Drydock Co. v. Great Atl. Ins. Co., 757 F.2d 1172, 1174 (11th Cir. 1985) (applying Florida law).  In so doing, the court must construe the "contract in its entirety, striving to give every provision meaning and effect." Dahl-Eimers v. Mut. of Omaha Life Ins. Co., 986 F.2d 1379, 1382 (11th Cir. 1993) (citing Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 941 (Fla. 1979)). Where a term in an insurance policy is ambiguous, a court must "construe it in favor of the insured and against the insurer." Gas Kwick, Inc. v. United Pac. Ins. Co., 58 F.3d 1536, 1539 (11th Cir. 1995) (citing Davis v. Nationwide Life Ins. Co., 450 So. 2d 549, 550 (Fla. 5th DCA 1984)).  However, a "court cannot rewrite an insurance contract to extend coverage beyond what is clearly set forth in the contractual language." Szczeklik v. Markel Int'l Ins. Co., Ltd., 942 F. Supp. 2d 1254, 1260 (M.D. Fla. 2013) (quoting Fla. Residential Prop. & Cas. Joint Underwriting Ass'n v. Kron, 721 So. 2d 825, 826 (Fla. 3d DCA 1998)).  Although the insured bears the burden of proving that a claim is covered by the insurance policy, the "burden of proving an exclusion to coverage is . . . on the insurer." LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir. 1997). However, if there is an exception to the exclusion, "the burden returns to the insured to prove the exception and show coverage." See Mid-Continent Cas. Co. v. Frank Casserino Constr., Inc., 721 F. Supp. 2d 1209, 1215 (M.D. Fla. 2010); see also LaFarge

---

[14]    This case is before the Court based on its diversity jurisdiction. See Complaint ¶¶9-10.  As such, the Court applies the choice of law rules of the forum state, Florida. See Rando v. Gov't Employees Ins. Co., 556 F. 3d 1173, 1176 (11th Cir. 2009).  Here, the parties do not dispute that Florida law applies. See generally Renewed Motion; Stazac Response; Greenland Response; Stonehurst Response.

Corp., 118 F.3d at 1516; <u>E. Fla. Hauling, Inc. v. Lexington Ins. Co.</u>, 913 So. 2d 673, 678 (Fla. 3d DCA 2005).

An insurer's duty to defend "is determined by comparing the allegations contained within the four corners of the underlying complaint with the language of the policy." <u>Addison Ins. Co. v. 4000 Island Blvd. Condo. Ass'n, Inc.</u>, 263 F. Supp. 3d 1266, 1269 (S.D. Fla. 2016) (citing <u>Jones v. Fla. Ins. Guar. Ass'n Inc.</u>, 908 So. 2d 435, 444 (Fla. 2005)).  That is,  an insurer's duty to defend is determined solely by the allegations in the underlying complaint.  <u>See</u> <u>Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co.</u>, 76 So. 3d 20, 23 (Fla. 1st DCA 2011); <u>see also</u> <u>Lawyers Title Ins. Corp. v. JDC (Am.) Corp.</u>, 52 F.3d 1575, 1580 (11th Cir. 1995).  "The duty arises when the relevant pleadings allege facts that 'fairly and potentially bring the suit within policy coverage.'" <u>Lawyers Title Ins. Corp.</u>, 52 F.3d at 1580 (quoting <u>Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.</u>, 980 F.2d 1402, 1405 (11th Cir. 1993)).  The actual facts of the situation are not relevant, such that "the insurer must defend even if facts alleged are actually untrue or legal theories unsound."  <u>Id.</u>  As a result, "an insurer's duty to defend is distinct from, and broader than, the duty to indemnify."  <u>Sinni v. Scottsdale Ins. Co.</u>, 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2009).  In addition, where a complaint contains "facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit."  <u>Category 5 Mgmt. Grp., LLC</u>, 76 So. 3d at 23.  Significantly, "[i]f an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured." <u>Lawyers Title Ins. Corp.</u>, 52 F.3d at 1580-81.

## IV. Discussion

### A. Preliminary Issues

As discussed above, the duty to defend "is determined from examining the most recent amended pleading, not the original pleading." State Farm Fire & Cas. Co. v. Steinberg, 393 F. 3d 1226, 1230 (11th Cir. 2004). However, when determining an insurer's duty to defend, a proposed amended pleading is not considered operative. See Century Surety Co. v. Hallandale Beach Serv. Station LLC, No. 10-21430-CIV-JORDAN, 2011 WL 13174906, at *2 n.1 (S.D. Fla. Mar. 21, 2011) (declining to consider a proposed amended complaint in evaluating an insurer's duty to defend), aff'd, 490 F. App'x 237 (11th Cir. 2012); Mid-Continent Cas. Co. v. Constr. Servs. & Consultants, Inc., No. 06-CV-80922, 2008 WL 896221, at *4 n.1 (S.D. Fla. Mar. 31, 2008) (same). As of the date of entry of this Order, Greenland's operative pleading is Greenland's Underlying Amended Complaint, and Stonehurst's operative pleading is Stonehurst's Underlying Statement of Claim. The state court has not ruled on Amelia's motion to amend its complaint via interlineation. See Stazac's March 9, 2018, Status Report at ¶1. Therefore, for purposes of determining PIIC's duty to defend, Amelia's operative pleading is Amelia's Underlying Complaint.

### B. The Duty to Defend

The Court must determine PIIC's coverage obligations by comparing the language of the Policy to the allegations in the Underlying Pleadings. See Addison Ins. Co., 263 F. Supp. 3d at 1269. The Underlying Pleadings include claims for negligence, breach of fiduciary duty, breach of contract, violations of FDUTPA, damages, unjust enrichment, civil theft, conversion, and conspiracy. See generally Underlying Pleadings. In the

Renewed Motion, PIIC does not contend that contend that all of the claims in the Underlying Pleadings fall outside the insuring language of the Policy. <u>See generally</u> Renewed Motion; <u>see also</u> Stazac's Response at 7 ("[T]he allegations in all three underlying complaints clearly fall within the insuring language as all allege some form of negligence on the part of the Stazac Defendants.").[15] As long as any of the claims in one of the Underlying Actions is covered under the Policy, PIIC would have a duty to defend that entire suit in that action on behalf of its insured. <u>Category 5 Mgmt. Grp. LLC</u>, 76 So. 3d at 23. Thus, to prevail in this action with regard to its duty to defend the Stazac Defendants, PIIC bears the burden of showing that there is no genuine dispute that coverage is excluded under the Policy for all claims raised in each of the Underlying Actions. <u>See</u> <u>LaFarge Corp.</u>, 118 F.3d at 1516. As to this critical issue, the parties dispute the applicability of the Commingling Exclusion and Exclusion A, and whether the damages sought in the Underlying Actions are uninsurable as a matter of law. <u>See</u> Renewed Motion at 20-26; Stazac Response at 8-14; Greenland Response at 5-12; Stonehurst Response at 3-4. Because the Court finds that the allegations in the Underlying Actions are excluded from coverage under the Policy by virtue of the Commingling Exclusion, the Court need not address the parties' other arguments.[16]

---

[15] In the Underlying Actions, Stonehurst and Greenland each assert claims for negligence against the Stazac Defendants. <u>See</u> Stonehurst's Underlying Statement of Claim ¶¶20-29; Greenland's Underlying Amended Complaint ¶¶41-47. Although Amelia does not assert a claim for negligence, PIIC does not contend that the claims asserted in Amelia's Underlying Complaint do not arise, at least to some degree, out of the Stazac Defendants' negligence and fall within the scope of the insuring language of the Policy. <u>See generally</u> Amelia's Underlying Complaint; Renewed Motion.

[16] Similarly, the Court need not address PIIC's request that the Court take judicial notice of the Underlying Criminal Case Docket, Arrest Report, Amended Information (Doc. 98-18), Jury Instructions (Doc. 98-19), Verdict, Judgment, and the Stonehurst, Greenland, and Amelia Judgments, as these documents are not relevant for purposes of the Court's analysis of the Commingling Exclusion. <u>See</u> Renewed Motion at 10 n.12; Supplement at 1 n.1.

### i. The Commingling Exclusion

The Commingling Exclusion precludes coverage for "[a]ny claim arising out of any actual or alleged commingling of or inability or failure to pay, collect or safeguard funds." <u>See</u> Commingling Exclusion. In the Renewed Motion, PIIC contends that this provision precludes coverage for all claims asserted in the Underlying Actions because it "bar[s] claims arising from the function of handling clients' money," regardless of the insured's intent. <u>Id.</u> at 9, 13, 22. In the responses, Defendants contend that the Commingling Exclusion is ambiguous, and therefore should be construed in favor of the insureds. <u>See</u> Stazac Response at 8-12; Greenland Response at 5-10; Stonehurst Response at 3. Specifically, the Stazac Defendants contend that the scope of the term "arising out of" is ambiguous, Stonehurst contends that the term "safeguard" is ambiguous, and all Defendants contend that the term "funds" is ambiguous. <u>See</u> Stazac Response at 9-12; Greenland Response at 7-8; Stonehurst Response at 3.

"Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." <u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So. 2d 29, 34 (Fla. 2000) (citation omitted). However, "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." <u>Id.</u> (citations omitted). Florida law recognizes two types of ambiguities, latent and patent, which have different rules of construction. <u>See</u> <u>Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC</u>, 915 So. 2d 657, 659-60 (Fla. 2d DCA 2005). "A latent ambiguity . . . arises 'where the language employed is clear and intelligible and suggests

but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.'" Id. at 659 (citation omitted). Importantly, the interpretation of an insurance policy with a latent ambiguity requires the court to consider parol evidence and would preclude entry of summary judgment. Id. at 660.

A patent ambiguity, on the other hand, is one that "appears on the face of the document and may not be resolved by the consideration of parol evidence." Id. at 659 (citation omitted); see also DaCosta v. Gen. Guar. Ins. Co. of Fla., 226 So. 2d 104, 105, 107 (Fla. 1969). Accordingly, the proper interpretation of a policy with a patent ambiguity is a question of law to be resolved by the Court on summary judgment. Escobar v. United Auto. Ins. Co., 898 So. 2d 952, 954-55 (Fla. 3d DCA 2005) (per curiam). In doing so, the Court must liberally interpret the policy in favor of the insured. See DaCosta, 226 So. 2d at 107; see also Gas Kwick, 58 F.3d at 1539 (citing Davis, 450 So. 2d at 550). "To find in favor of the insured on this basis, however, the policy must actually be ambiguous." Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010) (citation omitted) (emphasis in original). "A provision is not ambiguous simply because it requires analysis," id. at 1005 (citation omitted); see also Weldon v. All Am. Life Ins. Co., 605 So. 2d 911, 915 (Fla. 1992) (citation omitted), or because key terms are undefined, see Anderson, 756 So. 2d at 35 (citation omitted); State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1075 (Fla. 1998) (citations omitted). A patent ambiguity may be found only where "a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to ordinary rules of construction." Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1138 (Fla. 1998) (internal quotation and citation omitted).

Here, Defendants do not specify whether the alleged ambiguities in the Commingling Exclusion are patent or latent. <u>See generally</u> Stazac Response; Greenland Response; Stonehurst Response. However, based on the substance of their arguments, Defendants appear to contend that the Commingling Exclusion contains patent ambiguities. <u>Id.</u> Ultimately, the Court is of the view that the Commingling Exclusion is not ambiguous and that its clear language encompasses the factual allegations asserted in the Underlying Actions. As such, PIIC is entitled to a declaration that it has no duty to defend the Stazac Defendants in the Underlying Actions, and the Renewed Motion is due to be granted to that extent.

The Commingling Exclusion precludes coverage under the Policy "[a]ny claim arising out of any actual or alleged commingling of or inability or failure to pay, collect or safeguard funds." <u>Id.</u> (emphasis added). Notably, the Florida Supreme Court has determined that the term "arising out of," by itself, is not ambiguous, "and should be interpreted broadly." <u>See</u> <u>Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.</u>, 913 So. 2d 528, 539 (Fla. 2005); <u>see also</u> <u>James River Ins. Co. v. Ground Down Eng'g, Inc.</u>, 540 F. 3d 1270, 1275 (11th Cir. 2008). Specifically, the court has described the term as:

> broader in meaning than the term "caused by" and means "originating from," "having its origin in," "growing out of," "flowing from," "incident to" or "having a connection with." . . . [T]his requires more than a mere coincidence between the conduct . . . and the injury. It requires "some causal connection, or relationship." But it does not require proximate cause.

<u>Taurus</u>, 913 So. 2d at 539. Thus, the term "arising out of" "contemplates a more attenuated link than the phrase 'because of.'" <u>Garcia v. Fed. Ins. Co.</u>, 969 So. 2d 288, 293 (Fla. 2007).

The Stazac Defendants rely on <u>Westmoreland v. Lumbermens Mut. Cas. Co.</u>, 704 So. 2d 176 (Fla. 4th DCA 1997) and <u>Lumbermens Mut. Cas. Co. v. Dadeland Cove Section One Homeowners Ass'n, Inc.</u>, No. 06-22222-CIV, 2007 WL 2979828 (S.D. Fla. Oct. 11, 2007) to persuade the Court that the term "arising out of" renders insurance contracts ambiguous in some circumstances. <u>See</u> Stazac Response at 8-11. A review of these cases, however, discloses that they provide little, if any, support for the Defendants' contention. In <u>Westmoreland</u>, the court found that a policy's exclusion for bodily injuries "arising out of the ownership, maintenance, use, loading or unloading of motor vehicles" was ambiguous. <u>See</u> <u>Westmoreland</u>, 704 So. 2d at 177. However, Florida's Fourth District Court of Appeal later clarified that the ambiguity it identified in <u>Westmoreland</u> resulted from the term "arising out of" combined with other policy language. <u>See</u> <u>Taurus</u>, 913 So. 2d at 533 (citing <u>Estate of Bombolis v. Cont'l Cas. Co.</u>, 740 So. 2d 1229, 1230 (Fla. 4th DCA 1999)). More importantly, the Florida Supreme Court has determined that "<u>Westmoreland</u> does not hold that the 'arising out of' language, standing alone, is ambiguous." <u>Taurus</u>, 913 So. 2d at 533. For purposes of this action, it is the <u>Taurus </u>decision that constitutes binding precedent regarding the construction of the term "arising out of," not the prior decision of the Fourth District Court of Appeal. Notably, <u>the Stazac Defendants fail to acknowledge Taurus's definition of "arising out of</u>," and further fail to suggest that the context of <u>Westmoreland</u> is in any way analogous to the instant action. <u>See generally</u> Stazac Response. Thus, although the term "arising out of" might be ambiguous in certain contexts, the Stazac Defendants fail to convince the Court that it is ambiguous in the context of the Policy and allegations of the Underlying Actions.

The Stazac Defendants' reliance on <u>Dadeland</u> is equally unavailing.  There, the court interpreted an exclusion for damages "arising from" claims for "loss of use" and "destruction of or damage to any tangible property."  <u>Dadeland</u>, 2007 WL 2979828 at *1.  Ultimately, the court held that the policy "unequivocally" covered claims for breach of fiduciary duty.  <u>Id.</u> at *2.  In dicta, the court noted that "to whatever little extent" the exclusion "muddie[d] the coverage issue, <u>if at all</u>," it would rule in favor of coverage.  <u>Id.</u> (emphasis added).  Thus, contrary to the Stazac Defendant's contention, the decision does not support the conclusion that the court found the phrase "arising out of" is ambiguous.

The Court has found no Florida decision addressing the meaning of "arising out of" within a "failure to safeguard funds" exclusion.  However, in <u>Chi. Title Ins. Co. v. Northland Ins. Co.</u>, 31 So. 3d 214 (Fla. 4th DCA 2010), the court held that the term "arising out of" was not ambiguous within the context of a similar mishandling of funds exclusion.  <u>Id.</u> at 215.  There, the policy at issue excluded "coverage for '[a]ny damages arising out of the comingling, conversion, misappropriation or defalcation of funds or other property.'"  <u>Id.</u> at 215 n.1 (citation omitted).  The court found that the insurer had no duty to defend a title agent for negligently failing to supervise an attorney who misappropriated escrow funds because any liability "stem[med] from and [wa]s dependent on the misappropriation of funds by the attorney.  But for the attorney's actions, [the insurer] would have had no obligation to pay damages."  <u>Id.</u> at 216.  Therefore, the court held that the claims "clearly '[arose] out of' actions for which the exclusion preclude[d] coverage."  <u>Id.</u>; <u>see also</u> <u>Lake Buena Vista Vacation Resort, L.C. v. Gotham Ins. Co.</u>, No. 6:12-cv-1680-Orl-31DAB, 2013 WL 5532677, **2, 2 n.5 (M.D. Fla. Oct. 7, 2013) (determining that an exclusion for

claims "based upon or arising out of . . . conversion, misappropriation, commingling or defalcation of funds" precluded coverage for breach of fiduciary duty and breach of contract).

Despite the dearth of case-law in Florida, other jurisdictions have interpreted the term "arising out of" broadly in the context of "failure to safeguard" exclusions.[17] For example, in <u>Murray v. Greenwich Ins. Co.</u>, 533 F. 3d 644 (8th Cir. 2008), the court interpreted a policy which excluded claims "arising out of: . . . the inability or failure to pay, collect or <u>safeguard</u> funds held for others." <u>Id.</u> at 647 (emphasis added). The Eighth Circuit defined the term "arising out of" in the same manner as the Florida Supreme Court. <u>Id.</u> at 650. It recognized that the term "ha[s] been held to mean originating from, or having its origin in, growing out, or flowing from." <u>Id.</u> Applying this definition, the Eighth Circuit reversed the district court, and determined that a negligent misrepresentation claim against two real estate agents who refused to return their clients' money was excluded from coverage. <u>Id.</u> at 649. The court explained that "the claims alleged in the complaint would not have arisen" if the funds had "not been mishandled." <u>Id.</u> at 649.

Similarly, in <u>Fid. Nat'l Title Ins. Co. v. Maxum Indem. Co.</u>, No. 16-1360, 2017 WL 4048162 (E.D. Pa. Sept. 12, 2017), the Eastern District of Pennsylvania broadly construed an insurance exclusion for claims "'alleging, arising out of, based upon, relating to, or attributable to, directly or indirectly, any . . . commingling of funds or accounts, inability to pay or <u>failure to safeguard funds</u>.'" <u>Id.</u> at *7 (citation omitted) (emphasis added). The court found that the claims asserted in the underlying action for negligent

---

[17] Notably, in determining the interpretation of the phrase "arising out of" in the <u>Taurus</u> decision, the Florida Supreme Court looked first to decisions from Florida courts and then turned to decisions from other states for guidance. <u>See</u> <u>Taurus</u>, 913So. 2d at 535-37.

supervision and maintenance of an escrow fund were "at the very least, indirectly related to, and attributable to [the agent]'s commingling of the funds," and "directly" related to the failure to safeguard those funds.  Id.  In doing so, the court stated, "[t]he alleged failure to properly maintain or supervise the Escrow Account is a claim directly alleging, arising out of, based upon, relating to, and attributable to [the insured's] failure to safeguard funds, a claim that is excluded from coverage under the clear and unambiguous language of [the exclusion]."  Id.; see also Bethel v. Darwin Select Ins. Co., 735 F. 3d 1035, 1038 (8th Cir. 2013) (excluding coverage for a negligence claim based on the defendant's delay in recording a mortgage because the delay was part of a larger scheme to misappropriate funds and therefore arose out of the failure to safeguard funds); Hawks v. Am. Escrow, LLC, No. 09 C 2225, 2012 WL 966059, at *3 (N.D. Ill. Mar. 16, 2012) (denying coverage for claims based on an escrow company's breach of its promise to use client funds to satisfy tax and insurance bills under an exclusion for claims "arising out of . . . the commingling or improper use of, or failure to properly segregate or safeguard funds.").

Courts outside of Florida also broadly interpret exclusions pertaining to the general mishandling of funds.  See Northland Ins. Co. v. Stewart Title Guar. Co., 327 F. 3d 448, 451, 456 (6th Cir. 2003) (construing an exclusion for "damages arising out of the commingling, conversion, misappropriation or defalcation of funds or other property" to include both negligent and intentional conduct); PNA, L.L.C. v. Interstate Ins. Grp., No. Civ.A. 02-1130, 2003 WL 21488120, at *4 (E.D. La. June 20, 2003) (excluding coverage for a claim of negligent supervision of an employee who embezzled money); Bankers Multiple Line Ins. Co. v. Pierce, 20 F. Supp. 2d 1004, 1008 (S.D. Miss. 1998) (excluding a claim for negligence based on the failure to supervise an employee who

misappropriated funds).  Notably, Greenland relies on <u>Am. Auto. Ins. Co. v. Sec. Income</u> <u>Planners & Co., LLC</u>, 847 F. Supp. 2d 454, 464 (E.D.N.Y 2012) to argue that not all jurisdictions construe such exclusions broadly.  <u>See</u> Greenland Response at 10.  In <u>Am.</u> <u>Auto. Ins. Co.</u>, the Eastern District of New York found that an insurer had a duty to defend its insured against a claim for negligence based on its failure to supervise an employee who stole funds, despite a commingling exclusion in the policy.  <u>Am. Auto. Ins. Co.</u>, 847 F. Supp. 2d at 464.  The reasoning of the New York court appears to be distinguishable because the underlying plaintiff alleged fraud and negligent supervision on the part of two different actors.  <u>Id.</u>  The court recognized that the outcome would have been different if it faced the situation here, where the negligence claims against the Stazac Defendants are "'wholly at odds with the factual assertions" in the Underlying Pleadings because it is "impossible" to "<u>negligently</u> perpetrate[ ] the alleged massive fraud."  <u>Id.</u> (citing <u>Nat'l Union</u> <u>Fire Ins. Co. v. AARPO Inc.</u>, No. 97 Civ. 1438 (JSM), 1999 WL 14010, at *4 (S.D.N.Y. Jan. 14, 1999)).  Regardless, the Court finds the reasoning of <u>Chi. Title Ins. Co.</u>, in which Florida's Fourth District Court of Appeal interpreted a mishandling of funds exclusion broadly, and the opinions of other courts which broadly construe such exclusions, more persuasive than <u>Am. Auto. Ins. Co.</u>  Indeed, the weight of authority suggests that "arising out of" in the context of the exclusion before the Court is not ambiguous and is to be given a broad construction.  Accordingly, the Court concludes that the term "arising out of," as used within the Commingling Exclusion, is not ambiguous and the term should be given its ordinary meaning, as set forth by the Florida Supreme Court in <u>Taurus</u>.  <u>See</u> <u>Taurus</u>, 913 So. 2d at 539.

Similarly, the Court finds that the term "safeguard" is not ambiguous. According to the Oxford Dictionary, to safeguard means to "[p]rotect from harm or damage with an appropriate measure." Safeguard, OXFORDDICTIONARIES.COM, https://en. oxforddictionaries.com/definition/safeguard (last visited Apr. 3, 2018) (Oxford Safeguard Definition). Florida's Third District Court of Appeal recognized this clear, unambiguous meaning in St. Paul Fire & Marine Ins. Co. v. Llorente, 156 So. 3d 511 (Fla. 3d DCA 2014), where it interpreted a policy that excluded claims "[a]rising out of the inability or failure to pay, collect, administer or safeguard funds held or to be held for others." Id. at 513. There, the insured argued that the term "safeguard" was ambiguous as to whether it included claims based on negligence. Id. The court held that "[w]hether stolen or wrongfully disbursed, there was a failure to safeguard the [funds] at issue, i.e., keep [them] safe until disbursement was properly authorized." Id. Further, the court noted that the policy contained a separate exclusion for claims "[a]rising out of any dishonest, fraudulent, criminal or malicious act," which unlike the failure to safeguard funds, could not be imputed to other insureds. Id. at 513. In the court's view, the policy "could not [have] be[en] more clearly stated," and excluded coverage for a negligent disbursement claim. Id. at 512-13.

The Court finds Llorente persuasive and determines that the term "safeguard" is not patently ambiguous, and therefore, need not be liberally construed in favor of the Stazac Defendants. By its terms, the Commingling Exclusion precludes coverage for claims that arise out of the Stazac Defendants' failure to protect funds, whether such failure is intentional or negligent. This conclusion is bolstered by the fact that the Policy contains a separate exclusion for intentional acts, Exclusion A, and unlike the

Commingling Exclusion, Exclusion A contains the No Imputation Clause. Compare Exclusion A with Commingling Exclusion. Accordingly, the Court finds that the term "safeguard" does not render the Policy ambiguous.

Additionally, the Court is not persuaded that the term "funds" is ambiguous. The Stazac Defendants and Greenland contend that PIIC incorrectly equates the term "funds" with money, and that the term "funds" is limited to those sums segregated for a specific purpose. See Stazac Response at 8; Greenland Response at 7.[18] The Stazac Defendants argue that if PIIC intended the term "funds" to refer to all money, then it would have used language similar to the exclusion in GGIS Ins. Servs., Inc. v. Superior Court, 86 Cal. Rptr. 3d 515 (Cal. Ct. App. 2008), which expressly excluded claims arising out of the insured's "failure to . . . safeguard or return any money . . ." See Stazac Response at 8 n.2 (citing GGIS, 86 Cal. Rptr. 3d at 527) (emphasis omitted from original). Further, Greenland notes that the Merriam-Webster and Oxford dictionaries define "funds" as "1) 'a sum of money or other resources whose principal or interest is set apart for a specific objective,' or 2) 'money on deposit on which checks or drafts can be drawn.'" See Greenland Response at 7 (quoting Fund, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/funds (last visited Mar. 30, 2018) (Fund Merriam-Webster Definition) and Fund, OXFORDDICTIONARIES.COM, https://en.oxforddictionaries.com/definition/fund (last visited Mar. 30, 2018) (Fund Oxford Definition)).

Here, the Court is of the view that the term "funds" is not patently ambiguous. The plain definition of a "fund" is "money immediately available." See Fund, DICTIONARY.COM,

---

18      Notably, Stonehurst's contention that the term "funds" is ambiguous simply because it is undefined, see Stonehurst Response at 3, lacks merit as a matter of law, see Anderson, 756 So. 2d at 35.

http://www.dictionary.com/browse/fund?s=t (last visited Mar. 30, 2018) (Fund Dictionary Definition).  Although this includes money set aside for a specific purpose, <u>see</u> Merriam-Webster and Oxford Definitions, it also encompasses one's pecuniary resources, <u>see</u> Dictionary Definition.  Thus, there is no "genuine inconsistency" in the parties' proffered meanings, and the term is not ambiguous.  <u>See</u> <u>Llorente</u>, 156 So. 3d at 513 n.1 ("The fact that an apple and a banana are both 'fruits' does not make the term 'fruit' ambiguous.").

Notably, Greenland acknowledges that "a property manager, like Stazac, . . . does not segregate any specific funds for specific purposes."  <u>See</u> Greenland Response at 7.  Thus, the notion that PIIC would limit the Commingling Exclusion to funds that its insured never managed is not only be impractical, but impermissible under the law, as it would render the exclusion meaningless.  <u>See</u> <u>Dahl-Eimers</u>, 986 F.2d at 1382 (recognizing that the court must construe the "contract in its entirety, striving to give every provision meaning and effect.") (citation omitted); <u>see also</u> <u>Weldon</u>, 605 So. 2d at 915 ("[I]n construing contracts of insurance we must apply a construction that is practical and reasonable as well as just.").

Based on the foregoing the Court concludes that the language of the Commingling Exclusion "is clear and plain, something only a lawyer's ingenuity could make ambiguous.'" <u>Dimmitt Chevrolet, Inc. v. Southeastern Fid. Ins. Corp.</u>, 636 So. 2d 700, 705 (Fla. 1993) (quoting <u>U.S. Fid. & Guar. Co. v. Star Fire Coals, Inc.</u>, 856 F. 2d 31, 34 (6th Cir. 1988)).  The Policy unambiguously excludes coverage for all claims "arising out of," or "originating from," "growing out of," "flowing from," "incident to," or "having a connection with" the Stazac Defendants' failure to "safeguard," or "protect from harm or

damage" the Homeowners Associations' "funds," or available pecuniary resources. <u>See</u> <u>Taurus</u>, 913 So. 2d at 539; Oxford Safeguard Definition; Fund Dictionary Definition.

### ii. The Allegations Asserted in the Underlying Actions

Next, the Court analyzes the allegations asserted in the Underlying Pleadings to determine whether they fall within the unambiguous language of the Commingling Exclusion. Stonehurst's Underlying Statement of Claim asserts seven claims. <u>See</u> <u>generally</u> Stonehurst's Underlying Statement of Claim. Count I is a claim for negligence based on the Stazac Defendants' misappropriation of payments belonging to Stonehurst. <u>Id.</u> ¶¶20-29. Count II is for negligence based on the Stazac Defendants' failure to recommend that Stonehurst purchase insurance "to cover against the type of loss suffered . . . in this action." <u>Id.</u> ¶35. Count III is a claim for breach of the Stonehurst Agreement based on Stazac's misappropriation of payments to Stonehurst. <u>Id.</u> ¶¶38-43. In Count IV, Stonehurst asserts a FDUTPA violation based on the Stazac Defendant's misappropriation of such payments. <u>Id.</u> ¶¶44-49. And, Stonehurst's remaining claims for damages (Count V), civil theft (Count VI), and conversion (Count VII), are based on the Stazac Defendants' misappropriation of Stonehurst's funds for their own use. <u>Id.</u> ¶¶50-71.

In Greenland's Underlying Amended Complaint, Greenland asserts six claims, only four of which are relevant to the instant action. <u>See generally</u> Greenland's Underlying Amended Complaint. Greenland's claims for civil theft (Count III) and conversion (Count IV) are based on the Stazac Defendants' misappropriation of Greenland's funds for their own use. <u>Id.</u> ¶¶27-40. The claim in Count V for negligence is based on Stazac's negligent training of its employees with regard to accounting services, and negligent retention of

those employees.  Id. ¶¶41-47.  And in Count VI, Greenland asserts a claim for breach of the Greenland Agreement based on Stazac's failure to perform accounting services, analyze financial statements, maintain Greenland's books, and supervise its employees, all relating to the missing funds.  Id. ¶¶48-51.

Finally, Amelia asserts six claims in Amelia's Underlying Complaint.  See generally Amelia's Underlying Complaint.  Amelia's claims for civil theft (Count I), conversion (Count II), unjust enrichment (Count V), and conspiracy (Count VI) are based on the Stazac Defendants' misappropriation of Amelia's funds for their own use.  Id. ¶¶14-31, 42-52. The claim in Count III for breach of the Amelia Agreement is based on Stazac's alleged mishandling of payments to Amelia, unauthorized expenses, and failure to maintain Amelia's books.  Id. ¶¶32-36.  And in Count IV, Amelia asserts a claim for breach of fiduciary duty based on the Stazac Defendants' misappropriation of Amelia's funds.  Id. ¶¶37-41.  Amelia incorporates the allegation that the Stazac Defendants misappropriated its monies while performing "accounting and financial services" into each of its claims. See Amelia's Underlying Complaint ¶¶9-10, 14, 24, 32, 37, 42, 47.

PIIC contends that the Commingling Exclusion precludes coverage for all of these allegations, and therefore, it is under no obligation to defend the Stazac Defendants in any of the Underlying Actions.  See Renewed Motion at 13-25.  Defendants dispute PIIC's contention that all of their allegations fall within the Commingling Exclusion, but with the exception of Stonehurst, fail to specify which of the allegations are outside of the exclusion.  See generally Stazac Response; Greenland Response; Stonehurst Response at 2.  Although Stonehurst does not appear to dispute that its claims for violations of the FDUTPA (Count IV), damages (Count V), civil theft (Count VI), and conversion (Count

VII) are excluded from coverage, Stazac's position regarding these claims is unclear.  <u>See</u> Stonehurst Response at 2; <u>see generally</u> Stazac's Response.  Therefore, the Court will analyze each of the allegations in the Underlying Pleadings to determine PIIC's coverage obligations.

First, the Court finds that the Homeowners Associations' claims based on the Stazac Defendants' willful and malicious misappropriation of their funds fall squarely within the Commingling Exclusion.  The gravamen of these claims is that the Stazac Defendants unlawfully took possession of money that belonged to the Homeowners Associations, and converted such funds to their own use.  Clearly, the Stazac Defendants could not have simultaneously <u>stolen</u> and <u>safeguarded</u> the funds.  Thus, the Homeowners Associations' claims for damages[19], civil theft[20], conversion[21], unjust enrichment[22], and conspiracy all fall within the Commingling Exclusion.[23]

Further, the Court finds that the Commingling Exclusion also encompasses claims based on the allegations of the Stazac Defendants' non-intentional misappropriation of funds.  Whether maliciously stolen, or negligently handled, there was a failure to safeguard the Homeowners Associations' funds.  <u>See</u> <u>Llorente</u>, 156 So. 3d at 513 ("Whether stolen or wrongfully disbursed, there was a failure to <u>safeguard</u> the $1.5 million at issue, i.e. keep it safe until disbursement was properly authorized."); <u>see also</u> <u>Murray</u>,

---

[19]    <u>See</u> Count V of Stonehurst's Underlying Statement of Claim.

[20]    <u>See</u> Count VI of Stonehurst's Underlying Statement of claim; Count III of Greenland's Underlying Amended Complaint; Count I of Amelia's Underlying Complaint.

[21]    <u>See</u> Count VII of Stonehurst's Underlying Statement of Claim; Count IV of Greenland's Underlying Amended Complaint; Count II of Amelia's Underlying Complaint.

[22]    <u>See</u> Count V of Amelia's Underlying Complaint.

[23]    <u>See</u> Count VI of Amelia's Underlying Complaint.

533 F. 3d at 650 (finding that negligently handling funds entrusted in one's care constitutes a failure to safeguard those funds); Maxum Indem. Co., 2017 WL 4048162 at *7 (same); Bethel, 735 F. 3d at 1038 (same); Hawks, 2012 WL 966059 at *3 (same). Accordingly, PIIC is not obligated to defend the Stazac Defendants against the Homeowners Associations' claims for negligence,[24] breach of contract,[25] FDUTPA violations,[26] and breach of fiduciary duty,[27] to the extent that they are based on the mishandling of funds.

Notably, Greenland's negligence claim is not based on the Stazac Defendant's direct mishandling of funds, but on its negligent training of employees with regard to how to properly handle those funds. See Greenland's Underlying Amended Complaint ¶¶41-47. However, the Commingling Exclusion is broadly worded to cover all allegations that arise out of the failure to safeguard funds. Thus, Greenland need not allege that the Stazac Defendants were directly responsible for their missing funds in order to fall within the Commingling Exclusion. The Stazac Defendants' failure to teach their employees how to handle Greenland's money, or even supervise their employees' unguided attempts to do so, bear a causal relationship to Greenland's injuries. Therefore, the claim in Count V of Greenland's Underlying Amended Complaint falls within the Commingling Exclusion.

Further, the Court is not persuaded by Greenland's assertion that the Stazac Defendants are entitled to coverage because there has been no "actual or alleged" failure

---

[24]    See Count I of Stonehurst's Underlying Statement of Claim.

[25]    See Count III of Stonehurst's Underlying Statement of Claim; Count III of Amelia's Underlying Complaint; Count VI of Greenland's Underlying Amended Complaint.

[26]    See Count IV of Stonehurst's Underlying Statement of Claim.

[27]    See Count IV of Amelia's Underlying Complaint.

to safeguard funds.  <u>See</u> Greenland Response at 8.  Greenland contends that there cannot be an "actual" failure to safeguard funds until the Underlying Greenland Action is resolved, and that any allegation regarding the failure to safeguard funds must be express, not implicit, or the "actual or alleged" language on the Commingling Exclusion is rendered meaningless.  <u>Id.</u> However, to determine an insurer's duty to defend, courts are to disregard "[c]onclusory 'buzz words' unsupported by factual allegations."  <u>See</u> <u>Steinberg</u>, 393 F. 3d at 1230.  Thus, it is of little import that the Homeowners Associations do not expressly allege that the Stazac Defendants "failed to safeguard their funds."

Additionally, the Court notes that Stonehurst's second claim for negligence is based on the Stazac Defendants' failure to recommend that Stonehurst purchase insurance "to cover against the type of loss suffered . . . in this action."  <u>See</u> Stonehurst's Underlying Statement of Claim ¶35.  Notably, Stonehurst incorporates the allegation that the Stazac Defendants "did not perform or undertake the necessary due diligence to ensure that Association's accounts were properly maintained and that its financial records were reconciled and accurate" into all counts of its pleading, including this negligence claim.  <u>See</u> Stonehurst's Underlying Statement of Claim ¶¶16, 20, 30, 38, 44, 50, 53, 64. The failure to maintain Stonehurst's funds <u>is</u> a failure to safeguard Stonehurst's funds, and therefore falls within the Commingling Exclusion.  Nevertheless, even without this incorporated allegation, the essence of Stonehurst's negligence claim is that the Stazac Defendants failed to advise Stonehurst to insure against the risk that the Stazac Defendants would fail to protect Stonehurst's funds.  <u>Id.</u> ¶34.  Had the Stazac Defendants safeguarded Stonehurst's funds, then Stonehurst would not have been at risk of losing money, and this claim would not have arisen.  Thus, this claim is, at the very least,

"incident to" and has "a connection with" the Stazac Defendants' failure to safeguard those funds.

Here, "regardless of the label" the Homeowners Associations "attach to the cause[s] of action," the factual allegations on which the claims are based clearly arise out of the Stazac Defendants' mishandling of the Homeowners Associations' funds. See Lime Tree, 980 F. 2d at 1405-06 ("[T]he duty to defend turns on the 'grounds for liability' expressed by 'allegations of fact' in the underlying complaints."). Accordingly, the Court finds that the Commingling Exclusion encompasses all of the claims asserted in the Underlying Actions. As such, PIIC is entitled to a declaration that it is not obligated to defend the Stazac Defendants in the Underlying Actions and the Renewed Motion is due to be granted to the extent PIIC seeks such a declaration.

**C. Reimbursement**

As a final matter, the Court must address PIIC's request for reimbursement for the fees and costs it incurred in defending the Stazac Defendants in the Underlying Actions. See Renewed Motion at 24. Notably, none of the Defendants acknowledge or discuss PIIC's contention that it is entitled to reimbursement for these fees and costs. See generally Stazac Response; Greenland Response; Stonehurst Response.

Prior to assuming the Stazac Defendants' defense, PIIC expressly reserved "its right to recoup any fees and costs paid in the event [t]here is ultimately found not be coverage." See Stonehurst Reservation of Rights at 7; Greenland Reservation of Rights at 7; Amelia Reservation of Rights at 2 ("PIIC will defend its insureds under a reservation of rights pending a determination of its coverage position."). When an insurer offers to provide a defense and expressly reserves the right to seek reimbursement of the costs of

defending uncovered claims, then the insurer is entitled to such reimbursement.  See Colony Ins. Co. v. G & E Tires & Serv., Inc., 777 So. 2d 1034, 1039 (Fla. 1st DCA 2000); Jim Black & Assocs., Inc. v. Transcon. Ins. Co., 932 So. 2d 516, 518 (Fla. 2d DCA 2006). "In accepting the defense provided by [PIIC], [the Stazac Defendants] necessarily agreed to the terms on which [PIIC] extended the offer," Colony Ins. Co., 777 So. 2d at 1036, and did not pay PIIC "premiums to defend uncovered claims," Jim Black, 932 So. 2d at 518. Therefore, PIIC is entitled to reimbursement of the fees and costs it incurred in defending the Stazac Defendants in the Underlying Actions.  Further, the Policy expressly provides that if "it is finally established by judgment or agreement that [PIIC] ha[s] no liability with respect to" a claim PIIC has defended pursuant to a reservation of rights, PIIC is entitled to reimbursement for "all sums and monies paid . . . to defend and/or settle such claim." Policy at 12 §V.O.

In light of the foregoing, it is

**ORDERED**:

1.     Plaintiff, Philadelphia Indemnity Insurance Company's Renewed Motion for Final Summary Judgment and Supporting Memorandum of Law (Doc. 98) is **GRANTED** to the extent PIIC seeks entry of summary judgment on its claim in Count I of the Complaint.   The Court defers entry of judgment pending resolution of the remaining matters.

2.     Philadelphia Indemnity Insurance Company is ordered to show cause on or before **June 14, 2018**, why the Court should not dismiss Counts II and III of the Complaint as moot.

3. On or before **June 14, 2018**, the parties must submit a joint status report informing the Court how they intend to proceed in resolving any remaining disputed issues.

4. The final pretrial conference scheduled for June 18, 2018, is cancelled, and the trial is removed from the Court's July 2018 trial term.

**DONE AND ORDERED** at Jacksonville, Florida on May 31, 2018.

MARCIA MORALES HOWARD
United States District Judge

lc25
Copies to:
Counsel of Record